**O**

# United States District Court
# Central District of California

| | |
|---|---|
| R. TODD NEILSON, | Case No. 2:15-cv-08658-ODW-AJW |
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF'S** |
| SYNERGY HOLDINGS, LLC and Does | **MOTION FOR DEFAULT** |
| 1–10, inclusive, | **JUDGMENT [18]** |
| Defendants. | |

## I.   INTRODUCTION

On November 5, 2015, Plaintiff R. Todd Neilson, Trustee for the Chapter 11 Bankruptcy Estate of Ezri Namvar, filed a Complaint against Defendant Synergy Holdings, LLC ("Synergy Holdings") alleging that Synergy Holdings breached their March 4, 2015 settlement agreement. (Complaint ("Compl.") ¶¶ 30–34, ECF No. 1.) The Clerk of Court entered default as to Defendant on December 18, 2015. (ECF No. 16.) On January 19, 2016, Plaintiff filed the present Motion for Default Judgment. (Motion for Default Judgment ("Mot."), ECF No. 18.) In its Motion, Plaintiff asks the Court to grant default judgment on its breach of contract claim in the amount of $315,833.32 plus post-judgment interest pursuant to 28 U.S.C. § 1961. (*Id.* ¶ 30.) For the reasons discussed below, the Court **GRANTS** Plaintiff's Application for Default Judgment against Synergy Holdings.

## I.   FACTUAL BACKGROUND

### A.   Initial Claims Against Synergy Holdings and Settlement Between the Parties

Plaintiff is the Chapter 11 trustee for the bankruptcy estate of Ezri Namvar ("Namvar"). (Compl. ¶ 1.) On January 28, 2011, Plaintiff filed a Complaint in the bankruptcy court against Synergy Holdings to avoid and recover fraudulent transfers, to avoid and recover preferential transfer, for turnover, and to disallow a claim. (*Id.* ¶¶ 12–14.) On or about November 6, 2013, the bankruptcy court referred Plaintiff's Complaint for trial to this Court. (*Id.* ¶ 14.)

Then, on March 4, 2015, the parties entered into a settlement agreement in the amount of $350,000, resolving Plaintiff's claims. (*Id.* ¶¶ 16–18.) Pursuant to the settlement agreement, Synergy Holdings agreed to pay a down payment of $60,000 within ten calendar days from the signing of the agreement. (*Id.* ¶ 18.) Also, starting thirty days after the initial down payment, Synergy Holdings was to make monthly payments for the remaining balance of $290,000 over 36 months, with no interest accruing. (*Id.*) Synergy Holdings was also required to notify Plaintiff by phone and

email upon any payment default, and to cure any default payments within ten calendar days after providing such notice. (*Id.*)  Finally, pursuant to the settlement agreement, the parties agreed to a stipulated judgment in favor of Plaintiff for $400,000, less any payments made during the payment period, in the event Synergy Holdings defaulted in making payments. (*Id.*)

On March 4, 2015, this Court entered a Minute Order describing the terms of the settlement agreement, including a requirement that Synergy Holdings execute a stipulated judgment in the amount of $400,000 in favor of Plaintiff. (*Id.* ¶ 20.)  This Court then issued a Minute Order requiring the parties to file a Stipulation for Dismissal by May 4, 2015, or a joint status report as to why the parties could not yet finalize their settlement. (*Id.* ¶ 21.)  The Order stated that a failure of the parties to file a Stipulation for Dismissal or a joint status report would result in dismissal of the case. (*Id.*)  After the parties failed to file a status report notifying the Court that they would need more time to finalize the settlement agreement, the Court dismissed the case without prejudice on May 14, 2015. (*Id.* ¶¶ 22–24.)

**B.    Synergy Holding's Breach of the Settlement Agreement**

Pursuant to the settlement agreement, Synergy Holdings made the following payments to Plaintiff, totaling $84,166.68: $60,000 on March 13, 2015; $8,055.56 on April 22, 2015; $8,055.56 on May 20, 2015; and $8,055.56 on August 17, 2015. (*Id.* ¶ 25.)  However, Synergy Holdings failed to make payments to Plaintiff for the months of June 2015 and July 2015, as required by the settlement agreement. (*Id.* ¶¶ 26–27.)  On July 21, 2015, Plaintiff sent Synergy Holdings a notice of default, demanding that it satisfy the default payments, but Synergy Holdings failed to cure the defaulted payments within ten calendar days, as required by the settlement agreement. (*Id.* ¶¶ 28–29.)

On November 5, 2015, Plaintiff filed the present Complaint against Synergy Holdings, alleging breach of contract. (*Id.* ¶¶ 31–34.)  Plaintiff contends that Synergy Holdings breached the settlement agreement when it failed to make necessary

payments, despite being provided an opportunity to cure its default. (*Id.* ¶ 32.) Thus, Plaintiff asserts that, pursuant to the settlement agreement and the stipulation for entry of judgment that the parties agreed to, Plaintiff is entitled to a judgment of $400,000 against Synergy Holdings, less the $84,166.68 already paid. (*Id.* ¶ 34.) Therefore, Plaintiff contends that as a result of Synergy Holding's breach, the Namvar Estate has been deprived of funds due in the amount of $315,833.32. (*Id.* ¶¶ 33–34.)

After Synergy Holding failed to answer the Complaint, the Clerk of Court entered default against Synergy Holdings on December 18, 2015. (ECF No. 16.) Plaintiff subsequently filed the present Motion for Default Judgment on January 19, 2016. (Mot.) Plaintiff's Motion is now before the Court for decision.

## II.   LEGAL STANDARD

### A.   Default Judgment

Federal Rule of Civil Procedure 55(b) authorizes a district court to grant default judgment after the Clerk enters default under 55(a). A district court has discretion whether to enter default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Upon default, the defendant's liability generally is conclusively established, and the well-pleaded factual allegations in the complaint are accepted as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th 1977)).

In exercising its discretion, a court must consider several factors (the "*Eitel* Factors*"), including: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool,* 782 F.2d 1470, 1471–72 (9th Cir. 1986).

///

### III.   DISCUSSION

**A.   Procedural Requirements**

Before a court can enter default judgment against a defendant, the plaintiff must satisfy the procedural requirements for default judgment set forth in Federal Rules of Civil Procedure 54(c) and 55, as well as Local Rule 55-1.  Local Rule 55-1 requires that the movant submit a declaration establishing: (1) when and against which party default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is a minor, incompetent person, or active service member; and (4) that the defaulting party was properly served with notice.  *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1006 (C.D. Cal. 2014).

Plaintiff has satisfied these requirements.  The Clerk entered default on Synergy Holdings on December 18, 2015.  (ECF No. 16.)  Synergy Holdings is a limited liability company doing business in California, and therefore is not a minor, an incompetent person, or active service member.  (Mot. ¶ 28.)  Synergy Holdings was served with a Summons and Complaint on November 25, 2015.  (*Id.* ¶ 19.)  While Synergy Holdings has not appeared in the action, Plaintiff was not required to notify defendant of his intent to seek this default judgment because Rule 55(b)(2) requires service on the defaulting party only if that party has appeared in the action.  *See In re Roxford Foods, Inc.*, 12 F.3d 875, 879 (9th Cir. 1993) (noting that Rule 55(b)(2) notice "is only required where the party has made an appearance").  Finally, Plaintiff has complied with Federal Rule of Civil Procedure 54(c) by requesting a remedy not different in kind from that prayed for in the Complaint.  Plaintiffs have thus complied with the procedural prerequisites for entry of default judgment.  *See PepsiCo Inc., v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (finding that the procedural requirements of Rule 55 and Local Rule 55-1 are met where plaintiffs address each required factor in their application for default judgment).

**B.   *Eitel* Factors**

The Court finds that the *Eitel* factors weigh in favor of default judgment.  The

Court will discuss each factor in turn.

      1.    <u>Plaintiffs Would Suffer Prejudice</u>

The first *Eitel* factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered. *PepsiCo*, 238 F. Supp. 2d at 1177. This factor favors default judgment because Synergy Holdings has failed to appear or offer a defense in this case; therefore the only way the Plaintiff can obtain relief is through default judgment.

      2.    <u>Plaintiff Brought a Meritorious Claim and Plaintiff's Complaint Was Sufficiently Plead</u>

The second and third factors, the merits of Plaintiff's substantive claim and sufficiency of the Complaint, also support entry of default judgment. These factors require plaintiffs to "state a claim upon which they may recover." *See Philip Morris USA, Inc. v. Castworld Productions, Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003). To prevail on a breach of contract claim, the plaintiff must prove "(1) the existence of a contract; (2) plaintiff's performance or excuse for non-performance; (3) defendant's breach and (4) damage to plaintiff that was proximately caused by defendant's breach." *Richman v. Hartley*, 224 Cal. App. 4th 1182, 1186 (2014).

Plaintiff's Complaint adequately alleges all elements of a claim for breach of contract. Plaintiff asserts that the $400,000 settlement agreement obligated Synergy Holdings to pay Plaintiff a down payment of $60,000, followed by monthly payments to commence 30 days after the down payment is made. (Compl. ¶¶ 17–18.) Synergy Holdings made the $60,000 payment on March 13, 2015, followed by monthly payments of $8,055.56 on March 13, 2015, April 22, 2015, May 20, 2015, and August 17, 2015. (*Id.* ¶ 25.) However, Plaintiff alleges that Synergy Holdings breached the settlement agreement when it failed to make payments for the months of June and July 2015 and by failing to cure the default within ten calendar days, as required by the settlement agreement. (*Id.* ¶¶ 26–29.) Plaintiff has shown damages of $315,833.32 under the settlement agreement. (*Id.* ¶¶ 34–35.) This factor favors default judgment.

1      3.      The Amount at Stake Weighs in Favor of Default Judgment

2          The fourth factor balances the sum of money at stake "in relation to the

3  seriousness of the action." *Lehman Bros. Holdings Inc. v. Bayporte Enters., Inc.*, No.

4  C 11–0961-CW, 2011 WL 6141079, at *7 (N.D. Cal. Oct. 7, 2011) (internal citations

5  and quotations omitted).   The amount at stake must not be disproportionate to the

6  harm alleged.  *Id.*  Default judgment is disfavored where the sum of money at stake is

7  too large or unreasonable in relation to defendant's conduct.  *Truong Giang Corp. v.*

8  *Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May

9  29, 2007).

10          Plaintiff contends that, pursuant to the stipulation for entry of judgment agreed

11  upon by both parties as part of the settlement agreement, the Estate of Ezri Namvar is

12  entitled to a judgment of $400,000 against Synergy Holdings, less any amount paid.

13  (Mot. ¶¶ 18, 30.)   Synergy Holding has made payments to Plaintiff under the

14  settlement agreement in the total amount of $84,166.68.  (Troszak Decl. ¶ 5, ECF No.

15  20.)  Thus, Plaintiff argues that he is entitled to a total of $315,833.32.  (Mot. ¶ 30.)

16  Based on the evidence presented, the Court concludes that the damages Plaintiff seeks

17  are consistent with the terms of the settlement agreement and are otherwise

18  appropriate.  Furthermore, given Synergy Holdings' failure to appear and defend and

19  thus its failure to show that the requested damages are unreasonable, the Court finds

20  that the amount at stake weighs in favor of default judgment.

21      4.      There is No Possibility of Dispute as to Material Facts

22          The next *Eitel* factor considers the possibility that material facts are disputed.

23  *PepsiCo*, 238 F. Supp. 2d at 1177; *Eitel*, 782 F.2d at 1471–72.  As discussed, Plaintiff

24  has adequately pleaded in the Complaint that Synergy Holdings breached the

25  settlement agreement, resulting in the specified damages.  Synergy Holdings failed to

26  appear and is therefore held to have admitted all material facts alleged in Plaintiffs'

27  pleading.  *See PepsiCo*, 238 F. Supp. 2d at 1177 ("Upon entry of default, all well-

28  pleaded facts in the complaint are taken as true, except those relating to damages").

Plaintiffs' factual allegations in the Complaint are taken as true for purposes of satisfying the elements of its claims.  Since Plaintiffs' factual allegations are presumed true and Defendant failed to oppose the motion, no factual disputes exist that would preclude the entry of default judgment.  This factor, therefore, favors the entry of default judgment against Defendant.

> 5.    There is Little Possibility Default was Due to Excusable Neglect

Synergy Holdings' default does not appear to be a result of excusable neglect. There is little possibility of excusable neglect and default judgment is favored when the defendant fails to respond after being properly served.  *See Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012) (default judgment is favored when defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit.  Here, in spite of being properly served with the Summons and Complaint on November 25, 2015, Synergy Holdings failed to respond. (*See* Mot. ¶ 19.)  Accordingly, the sixth *Eitel* factor favors default judgment.

> 6.    Policy for Deciding on the Merits Weighs in Favor of Granting Default Judgment

In *Eitel*, the court maintained that "[c]ases should be decided upon their merits whenever reasonably possible."  782 F.2d at 1472.  However, where, as in the case at bar, a defendant fails to answer the plaintiff's complaint, "a decision on the merits [is] impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177.  Because Synergy Holdings failed to respond to the Plaintiff's Complaint, the Court finds that the seventh *Eitel* factor does not preclude default judgment.

**C.    Amount of Plaintiff's Recovery**

After determining default liability, the Court then calculates the amount of damages that should be awarded.  *Wecosign*, 845 F. Supp. 2d at 1078.  This additional step in the default inquiry is proper because, while for purposes of default judgment the Court generally accepts as true the factual allegations of the complaint, the Court need not do so regarding damages.  *Id.*

1          1.      Damages

2          Plaintiff seeks $315,833.32 in damages for Synergy Holdings' breach of the

3    settlement agreement.  (Mot. ¶ 31.)  Plaintiff and Synergy Holdings agreed to settle a

4    previous case in the amount of $350,000.  (Raanan Decl. ¶ 5, ECF No. 21.)  Pursuant

5    to the settlement agreement, Synergy Holdings was obligated to first make a down

6    payment of $60,000 to Plaintiff within ten calendar days of the settlement agreement's

7    creation, followed by monthly payments towards the remaining $290,000 balance to

8    be paid over 36 months with no interest accruing.  (Id.)  The settlement agreement

9    also provides that the parties agree to a stipulated judgment to be held in favor of

10   Plaintiff in the amount of $400,000 less for any payments already made by Synergy

11   Holdings, in the event of any default in payment.  (Id.)  Synergy Holdings has made

12   the following payments to Plaintiff under the settlement agreement: $60,000 on March

13   13, 2015; $8,055.56 on April 22, 2015; $8,055.56 on May 20, 2015; and $8,055.56 on

14   August 17, 2015.  (Troszak Decl. ¶ 5.)  Synergy Holding's total payments made to

15   Plaintiff under the settlement agreement are $84,166.68.  (Id.)  Subtracting the

16   $84,166.68 that Synergy Holdings has already paid Plaintiff from the $400,000

17   stipulated judgment, Synergy Holdings owes Plaintiff $315,833.32.  Therefore, the

18   damages Plaintiff seeks pursuant to the settlement agreement is appropriate.  2.

19          Post-Judgment Interest

20          Plaintiff also seeks post-judgment interest.  (Mot. ¶ 32.)  "Under the provisions

21   of 28 U.S.C. § 1961, post-judgment interest on a district court judgment is

22   mandatory."  *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288,

23   290 (9th Cir. 1995) (citing *Perkins v. Standard Oil Co. of Cal.*, 487 F.2d 672, 674 (9th

24   Cir. 1973).  The post-judgment interest rate is set "as a rate equal to the weekly

25   average 1-year constant maturity Treasury yield, as published by the Board of

26   Governors of the Federal Reserve System, for the calendar week preceding…the date

27   of the judgment."  28 U.S.C. § 1961(a).  For the calendar week preceding February

28

18, 2016, that rate was .53%.[1]   Accordingly, the Court awards Plaintiff post-judgment interest on the $315,833.32 damages award.  Plaintiff will receive interest daily, from the date of this Order until the date of payment, compounded annually.  *See* 28 U.S.C. § 1961(b).

## IV.   CONCLUSION

For the reasons discussed above, the Court grants Plaintiff's Application for Default Judgment and directs the Clerk to enter judgment against Synergy Holdings in the amount of $315,833.32.  The Court also awards Plaintiff post-judgment interest at a rate of .53 percent from February 19, 2016, until the date of payment.  A judgment shall issue.

**IT IS SO ORDERED.**

February 22, 2016

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

---

[1] Board of Governors of the Federal Reserve System, *February 16, 2016 H.15 Selected Interest Rates*, Federal Reserve, http://www.federalreserve.gov/releases/h15/current/ (last updated Feb. 22, 2016).